Leon JONES, Petitioner–Appellant,

v.

Odie WASHINGTON, Warden, Respondent–Appellee.

No. 92–2025.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1993.

Decided Feb. 1, 1994.

Diana C. White, Jerold S. Solovy, David I. Schrodt (argued), Jenner & Block, Chicago, IL, for petitioner-appellant.

Bradley P. Halloran (argued), Office of the Attorney General, Chicago, IL, for respondent-appellee.

Before COFFEY, FLAUM, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Leon Jones, a state prisoner who was convicted of attempted murder, attempted robbery and aggravated battery, filed a petition for habeas corpus in the district court. On appeal Jones raises two claims. He argues that the prosecution withheld material exculpable evidence which suggests that his firearm might have been inoperable, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Jones raises an additional claim that his counsel was ineffective for failing to examine and investigate the firearm. We affirm the judgment of the district court.

### I. Background

*A. Facts*

Jones waived his right to a jury, and a bench trial was held. Three victims to crimes which occurred on the night of May 21, 1980, and the arresting police officer testified at Jones' trial. Jones testified in his own defense. The first victim stated that between 11:45 p.m. on May 21, 1980, and 12:15 a.m. on May 22, 1980, he was emptying the garbage outside the food service where he worked at 1347 East 87th Street when he heard a shot. The victim dropped to the ground, and when he looked up, he saw a man, whom he later identified as Jones, advancing towards him and pointing a gun. Jones ordered the victim off the ground, grabbed him and threatened to kill him while holding a gun to his head. The victim began pounding on the door, but an employee inside refused to open the door. Jones took $100

from the victim and fled, shooting in the air while he was running. The victim then heard sirens.

The second victim, a security guard, testified that at about 12:30 a.m. on May 22, 1980, at 89th and Woodlawn an assailant held an automatic pistol to him, threatened to take him hostage, tried to take money from him, and shot him in the knee. Upon seeing Jones a few hours later, the victim identified Jones as his attacker.

The third victim, an off-duty sheriff's police patrolman, stated that between 12:15 and 12:30 a.m. on May 22, 1980, he was getting out of his car at 1021 East 90th Street when a man approached, pointed a gun at him, and said that he wanted to be driven away because the police were looking for him. The assailant hit and kicked the victim and then tried to get into the victim's car. The victim fired his own revolver across the front seat. The assailant shot back with an automatic pistol, shattering the car's rear window. After the victim fired again, the assailant cried out and fled.

All three victims identified Jones at the hospital where he had been taken for treatment of a gunshot wound. The arresting police officer testified that while driving down 87th Street he heard a broadcast that an offender was fleeing westbound on 90th Street; the broadcast included a description of the offender. When the officer reached 91st Street, he saw a man matching the description on the broadcast jogging westbound. The officer also testified that Jones had an empty automatic pistol in his pants at the time of arrest. Jones was taken to the hospital where the three victims identified him as the man who attacked them.

Jones testified on his own behalf. He denied any involvement in the attacks against the three victims. Jones testified that he was walking home from a craps game with an unloaded gun when he was arrested. Jones denied that anyone identified him at the hospital.

The trial judge found Jones guilty of the charged crimes, and convicted him of two counts of armed robbery, three counts of attempted murder, and one count of aggra-

vated battery; he received concurrent ten-year sentences for armed robbery and attempted murder on the first victim, concurrent ten-year and twenty-year sentences for each offense against the second victim, and a ten-year sentence for the offense against the third victim. Each group of sentences was to run consecutively for a total of forty years.

### B. Procedural History

Jones appealed his conviction to the Illinois Appellate Court which affirmed his conviction. He then filed a petition for leave to appeal to the Illinois Supreme Court, and the petition was denied.

Jones filed a post-conviction petition in the Illinois trial court, raising two claims for the first time. First Jones alleged that a *Brady* violation had occurred, and second he claimed that his trial counsel was ineffective for failing to examine or obtain test results for the firearm found on Jones at the time of his arrest. Jones attached an affidavit in which he claimed that before a preliminary hearing he approached the bench and "saw the judge review what appeared to be a ballistics report." Jones further claimed that "after examining the report the Judge commented to the Assistant States Attorney ... that the report indicated the 9 millimeter pistol had not been fired." This worksheet had never been produced during discovery or at Jones' trial.

The post-conviction court concluded that Jones had not made a sufficient showing that he had been denied due process or effective assistance of counsel and denied his petition. The Illinois Appellate Court affirmed. The court ruled that the defendant's affidavit was not sufficient to create reasonable doubt that he was the assailant and thus to merit a new trial. Jones filed a petition for leave to appeal to the Illinois Supreme Court. In his petition he raised only one claim: the *Brady* violation. The Supreme Court of Illinois denied his petition for leave to appeal.

Jones filed a petition for habeas corpus in the district court. He raised a myriad of claims, including the claims of a *Brady* violation and ineffective assistance of trial counsel. The district court denied his petition. Jones then filed a request for a certificate of

probable cause and attached a copy of the firearms report, claiming that his lawyer was negligent in failing to attach it to his petition. The district court granted a certificate of probable cause but refused to allow Jones to supplement the record. Jones filed a "Motion to Supplement Record on Appeal" in this court, and his motion was granted. The firearms worksheet is now part of the record on appeal.

## II. Discussion

### A. Waiver

Before considering the merits of a petition for habeas corpus, a federal court must ensure that the petitioner has overcome two procedural hurdles: exhaustion and procedural default. *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). Failure to exhaust all state remedies bars consideration of the petition. Failure to raise all claims during the course of the state court proceedings bars consideration of those claims not raised. *Id.* The district court found no procedural default on the *Brady* claim or on the claim that trial counsel was ineffective for failure to order an independent ballistics examination. Exhaustion was not an issue before the district court.

### 1. Exhaustion

Although the State did not raise the issue of exhaustion before the district court, the recent appearance of the firearms worksheet has prompted the State to argue before this court that the state courts were not afforded adequate opportunity to consider Jones' claims of a *Brady* violation and ineffective assistance of counsel. The substance of a federal claim in a petition for habeas corpus must first be presented to the state courts. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The state courts must have a fair opportunity to consider the petitioner's constitutional claims before the federal courts may address those claims. *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128,

1131–32 (7th Cir.1990). The State argues that Jones has failed to exhaust his state court remedies by failing to present the firearms worksheet because, without presenting the firearms worksheet, Jones did not give the state court a full and fair opportunity to consider either of his claims.

Although Jones never presented the firearms worksheet to the state courts, he did raise the substance of his *Brady* claim before the Illinois post-conviction court. Jones presented his claims to the post-conviction court by alleging that at the preliminary hearing he saw a ballistics sheet on the pistol and that before the hearing the judge commented to the Assistant State's Attorney that the report indicated the pistol had not been fired. Although he submitted only his own affidavit as evidence, Jones alleged all the facts to support his federal claim. Furthermore, the deadline for filing a second post-conviction petition has passed. 725 ILCS 5/122–1 (1992). The Illinois statute provides an exception to the time limitation for filing petitions upon a showing of a lack of culpable negligence. *Id.* However, this court acknowledged in *Harris v. DeRobertis* that "during the more than forty years since the provision was included, the Illinois courts have failed to produce even a single published opinion in which the court found a lack of culpable negligence." *Harris v. DeRobertis,* 932 F.2d 619, 622 (7th Cir.1991). Culpable negligence will be found in only exceptional cases and is unavailable to virtually all petitioners. *Id.* at 623. Consequently, this court held that a petitioner need not "resort to the Illinois post-conviction process if a petition would be untimely, absent judicial precedent indicating that the culpable negligence exception would be met." *Id.* at 623–24. The State has not produced any precedent indicating that a second petition would be anything but futile, and we will not "hypothesiz[e] arguments that [Jones] might assert to meet the culpable negligence exception." *Id.* at 623. In the absence of direct precedent suggesting that the Illinois courts would allow Jones to file an untimely second post-conviction petition on a claim previously raised, Jones has exhausted his state court remedies.

## 2. Procedural default

■ The State argues that Jones procedurally defaulted on both his claims by failing to raise them during the post-conviction proceedings. Before bringing his claims in a federal habeas proceeding, a prisoner must first raise his claims during the course of the state proceedings in order to avoid procedural default. *Henderson,* 859 F.2d 492; *see Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986); *Sykes,* 433 U.S. 72, 97 S.Ct. 2497. Failure to "fairly present" his federal claims to the state courts will result in procedural default of those claims unless the petitioner can show cause and prejudice. *Verdin v. O'Leary,* 972 F.2d 1467 (7th Cir.1992) ("fair presentment is a useful approach for analyzing procedural default"); *see Sykes,* 433 U.S. 72, 97 S.Ct. 2497.

■ Jones has procedurally defaulted on his ineffective assistance of counsel claim. Although Jones filed a petition for leave to appeal to the Supreme Court of Illinois after the Illinois Appellate Court affirmed the denial of his post-conviction petition, Jones did not raise the ineffective assistance of counsel claim in his petition for leave to appeal. His petition mentions only the claim of a *Brady* violation. Failure to appeal claims in state post-conviction proceedings will result in procedural default of those claims unless Jones can show cause and prejudice. *Farrell v. Lane,* 939 F.2d 409 (7th Cir.) (petitioner waived claim by failing to appeal denial of post-conviction petition), *cert. denied,* —— U.S. ——, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991); *Morrison v. Duckworth,* 898 F.2d 1298, 1300 (7th Cir.1990); *see U.S. ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir.1990) ("a federal claim not presented to the state courts is procedurally barred in federal court") (citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). The Supreme Court of Illinois was not afforded any opportunity, much less a "fair opportunity," to consider the claim. Jones has made no attempt to demonstrate the required cause and prejudice for failing to present his ineffective assistance claim to the state's highest court; therefore, that claim is procedurally defaulted and is barred from federal review.

Citing *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), Jones argues in his reply brief that he has not procedurally defaulted because on review of the denial of his post-conviction petition, the Illinois Appellate Court, the last state court to rule on the ineffective assistance claim, determined the claim on the merits. Jones misapplies *Harris v. Reed.* The issue in *Harris v. Reed* was whether the Illinois Appellate Court denied the petitioner's claim on procedural grounds due to his failure to raise the claim on *direct* review. *Harris v. Reed* applies to the instant case only insofar as preserving Jones' claims despite his failure to raise them on direct review. Once Jones filed a petition for post-conviction proceedings, he was required to take all his claims to the state's highest court. The Illinois Appellate Court's discussion of Jones' ineffective assistance claim does not excuse the default at the post-conviction level. *See Morrison,* 898 F.2d at 1300 n. 3. Jones' failure to reiterate his ineffective assistance of counsel claim results in procedural default of the claim, and this court cannot consider it.

Jones has not procedurally defaulted on his *Brady* claim. After raising the *Brady* claim in the post-conviction court, Jones continued to raise that same claim—that he believed that a firearms worksheet existed which questioned the operability of the gun—at every level of the subsequent proceedings. Although the actual firearms worksheet provides more substantial evidentiary proof, its appearance does not introduce a new claim.

## B. Merits of the Brady Violation Claim

After determining that Jones has overcome exhaustion and procedural default on his *Brady* claim, we may consider Jones' contention that the prosecution withheld material exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), thereby depriving Jones of due process. Jones produced a firearms worksheet which states that the barrel of the firearm found on Jones at the time of his arrest contained "residue" in the form of "dried mud." As for the firearm's

"operating condition," the worksheet indicates that the firearm "apparently will fire." No tests were ever performed on the firearm.

 . A successful *Brady* claim requires that the petitioner show that favorable evidence was suppressed by the prosecution and that the evidence was material to guilt or punishment. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady,* 373 U.S. 83, 83 S.Ct. 1194; *United States v. Dimas,* 3 F.3d 1015, 1017–18 (7th Cir.1993). Evidence is material if there is a "reasonable probability" that the outcome would have been different had the evidence been disclosed to the defense. *Ritchie,* 480 U.S. at 57, 107 S.Ct. at 1001; *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Ritchie,* 480 U.S. at 57, 107 S.Ct. at 1001; *Bagley,* 473 U.S. 667, 105 S.Ct. 3375.

The parties agree that the prosecution did not disclose the firearms worksheet. The record indicates that the defense requested exculpatory evidence, and the State replied that it had none. The pertinent question for this appeal is whether the worksheet is material exculpable evidence which would have undermined the finding of Jones' guilt had it been disclosed to the defense.

 Jones compares his case to *Smith v. Fairman,* 769 F.2d 386 (7th Cir.1985), arguing that the facts are "virtually identical." In *Smith* the withheld firearms worksheet indicated that the gun allegedly used by the defendant was "inoperable," thereby potentially damaging the credibility of the officers who testified that the defendant had shot at them. Failure to disclose the worksheet constituted a *Brady* violation. In contrast, the worksheet on Jones' firearm did not suggest that the firearm was inoperable. The worksheet noted "dried mud" but stated that the firearm "apparently will fire"; rather than note that the firearm was inoperable, the worksheet stopped short of stating conclusively that it was operable. If the worksheet noted that the firearm "apparently won't fire," this case would be closer to *Smith.* Jones argues that the presence of dried mud in the barrel calls into question the operability of the gun, but it is equally conceivable that Jones dropped the gun in the mud after firing it, and then placed it in his pants where it was found by the arresting officer. This could explain how dried mud was found in the barrel after three eyewitnesses testified that they saw Jones fire the gun at them. The worksheet does not undermine the outcome of the trial. Nor does it undermine the credibility of the three eyewitnesses who saw Jones in good lighting and subsequently identified Jones as the man who fired shots at them.

Jones argues that the worksheet destroys the weak links of circumstantial evidence which led to his conviction. In particular he attacks the testimony of the police officer who claimed to have shot at Jones after Jones fired at him. Jones argues that if the events happened as described by the officer, it would have been impossible for Jones to sustain a bullet wound caused by a bullet entering through the back of his right calf. Jones' bullet theory was introduced at Jones' trial, and was considered by the trial judge in arriving at a final determination of Jones' guilt. The worksheet does not further question the credibility of the officer, thus, the worksheet is insufficient to create reasonable doubt. Our opinion, based upon the testimony of the three eyewitnesses and the possibility that the mud lodged in his gun after he fired it, is that the result would not have been different if the defense had been given the firearms worksheet. The assessment on the gun was that it appeared to be capable of being fired, despite the acknowledged presence of dried mud in the barrel.

### III. Conclusion

For the foregoing reasons we AFFIRM the judgment of the district court denying the writ of habeas corpus.