UNITED STATES of America ex rel.
Ordell NELSON, Petitioner,

v.

George E. DE TELLA, Respondent.

No. 91 C 4244.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 1996.

John Thomas Thies, Chicago, Illinois, for Petitioner.

Michael Marc Glick, Illinois Attorney General's Office, Chicago, Illinois, for Respondent.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court are eight claims that petitioner Ordell Nelson ("Nelson") raised in his petition for a writ of habeas corpus. For the reasons that follow, Nelson's claims, and his habeas corpus petition in its entirety, are denied.

### I. *BACKGROUND*

This case is before the court on remand from the Seventh Circuit Court of Appeals. On July 14, 1994, this court denied Nelson's petition for a writ of habeas corpus. The court concluded that eight of Nelson's 10 claims were procedurally defaulted, because

Nelson did not present the eight claims to the Illinois Supreme Court. The court addressed and rejected the remaining two claims on their merits.

After petitioning for rehearing, which the court denied, Nelson appealed to the Seventh Circuit Court of Appeals. On appeal, Nelson argued that even though his counsel may not have presented all of his claims in their submissions to the Illinois Supreme Court, he did so himself in supplements filed *pro se.* The state denied that Nelson filed such documents. The court of appeals found that this court must resolve this disputed issue of fact and determine whether Nelson presented any of the eight claims to the Illinois Supreme Court in *pro se* briefs.

The court of appeals also stated that since this court's initial decision denying Nelson's petition, it had made clear in *Hogan v. McBride,* 74 F.3d 144, *modified on denial of reh'g,* 79 F.3d 578 (7th Cir.1996), that failure to include an issue in a petition seeking discretionary review by a state's highest court is a forfeiture if and only if the state itself considers it a forfeiture. The court noted that it had observed in *Jenkins v. Gramley,* 8 F.3d 505 (7th Cir.1993), that the courts of Illinois require some issues to be so presented, but do not require all issues at all stages of the direct and collateral proceedings to be so presented. Accordingly, the court of appeals instructed this court to determine, in accordance with *Hogan,* whether Illinois would deem any omitted claims forfeited, and to resolve on the merits any claims not forfeited.

Because the court of appeals affirmed this court's judgment regarding the two claims that the court addressed on their merits, those two claims are not at issue before this court.

## II. *DISCUSSION*

### A. Whether Nelson presented his habeas corpus claims to the Illinois Supreme Court in *pro se* filings

Nelson's eight claims that this court ruled were forfeited by his failure to bring them before the Illinois Supreme Court are as follows:

1. Nelson's fourth and fourteenth amendment rights were violated by the state's use of illegally seized evidence, gained when Nelson was arrested without probable cause;

2. Nelson's fourth and fourteenth amendment rights were violated by officers' interrogation of Nelson based on an anonymous tip that the officers did not corroborate;

3. Nelson's fourth, fifth, sixth, and fourteenth amendment rights were violated by the trial judge's refusal to suppress the statements that Nelson gave during his detention and interrogation at the police station;

4. Nelson's fourteenth amendment rights were violated by the state's prosecutorial misconduct, where the prosecutor made prejudicial and inflammatory statements not based on the evidence;

5. Nelson's sixth amendment rights to effective assistance of counsel were violated by his trial counsel's failure to investigate the facts and circumstances of Nelson's initial arrest, which led to his arrest for murder;

6. Nelson's sixth amendment rights to effective assistance of counsel were violated by his trial counsel's failure to file a timely motion to suppress and quash his arrest and evidence seized;

7. Nelson's sixth and fourteenth amendment rights to effective assistance of counsel were violated by his appellate counsel's failure to raise the issue that the trial judge erred when he declined to instruct the jury on voluntary manslaughter based on serious provocation;

8. Nelson's sixth and fourteenth amendment rights to effective assistance of counsel were violated by his appellate counsel's failure to raise the issue of prosecutorial misconduct.

In his direct appeal of his conviction to the Illinois Appellate Court, Nelson raised none of these claims. (*See* Ex. to Answer to Pet. for Writ of Habeas Corpus.) Nelson filed a *pro se* petition for leave to appeal to the Illinois Supreme Court from the appellate court's decision affirming his conviction and sentence. (*See* Ex. to Answer to Pet. for Writ of Habeas Corpus.) In his petition for leave to appeal, he simply attached the appel-

late court's order, thus raising only the issues that were raised in the initial appeal. (*See id.*) The supreme court denied leave to appeal.

Nelson then filed a *pro se* post-conviction petition in state court, and his appointed counsel filed an amended post-conviction petition. It appears that between the *pro se* and amended petitions, Nelson raised all of the claims that he later raised in his habeas corpus petition. The court dismissed the post-conviction petition, and Nelson, through his counsel, appealed. In the appellate brief prepared by his counsel, Nelson contended that the court below erred in dismissing his claims of ineffective assistance of trial and appellate counsel without holding an evidentiary hearing. (*See* Ex. to Answer to Pet. for Writ of Habeas Corpus, Brief and Argument for Appellant–Petitioner, at 9.) The substance of Nelson's ineffective assistance claims was that trial counsel failed to call Nelson as a witness in the pretrial hearing on his motion to suppress and at trial, even though Nelson wanted and expected to testify; and appellate counsel failed to raise the issue that the trial court erred in refusing to instruct the jury on voluntary manslaughter based on serious provocation. (*See id.* at 10–14.) [1]

Nelson also filed a *pro se* supplement to the appellate brief, in which he raised numerous other issues. (*See* Ex. to Answer to Pet. for Writ of Habeas Corpus, Supplement Brief and Arguments for Appellant.) Rather than set forth all of these issues, suffice it to say that in his *pro se* supplemental brief Nelson raised all of the claims that he later raised in his habeas corpus petition in this court, which are summarized above. The appellate court affirmed the lower court, addressing and rejecting on their merits all of the claims raised by both Nelson and his counsel. (*See* Ex. to Answer to Pet. for Writ

of Habeas Corpus, Appendix to Petition for Leave to Appeal.)

Through his counsel, Nelson filed a petition for leave to appeal to the Illinois Supreme Court from the appellate court's decision affirming the lower court's dismissal of Nelson's post-conviction petition. (*See* Ex. to Answer to Pet. for Writ of Habeas Corpus, Petition for Leave to Appeal.) The petition for leave to appeal raised the issues of ineffective assistance of counsel due to trial counsel's refusal to allow Nelson to testify; and the trial court's failure to give an instruction on voluntary manslaughter based on serious provocation.[2] The supreme court denied leave to appeal. Nelson then filed his petition for a writ of habeas corpus in this court.

As if the procedural history of this case to this point were not complicated enough, it gets even more so. Based on the pleadings described above, this court found that Nelson procedurally defaulted most of his claims for failing to raise them in the Illinois Supreme Court. However, on motion for rehearing and before the Seventh Circuit, Nelson claimed that he filed *pro se* briefs before the Illinois appellate and supreme courts in which he raised all of the claims that he also raised in his habeas petition.

The court acknowledges that Nelson filed a *pro se* petition for leave to appeal on his direct appeal, as well as a *pro se* supplement to the appellate brief on his post-conviction appeal, both of which the state courts and this court considered. But before Nelson filed his motion for rehearing, neither he nor the state had provided this court with a copy of a *pro se* petition for leave to appeal from the dismissal of his post-conviction petition, so the court addressed his claims without examining a *pro se* post-conviction petition for leave to appeal.

With his motion for rehearing, Nelson submitted what he claimed was a *pro se* post-conviction petition for leave to appeal. Nel-

---

1. Nelson also claimed that he deserved a new trial where the trial judge gave instructions held to grave, non-waivable error in *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988). This court addressed this claim on the merits, and the court of appeals affirmed this court's judgment, so that claim is not at issue on remand.

2. The petition for leave to appeal also raised the claim of defective voluntary manslaughter instructions under *Reddick*, which is not at issue on remand. *See* footnote 1 above.

son submitted a copy of a "notice of proof and service" stating that on January 17, 1991, Nelson shall file with the Supreme Court Clerk of Illinois the attached petition for leave to appeal. The notice stated that Nelson mailed the notice and attached petition for leave to appeal on January 8, 1991. In the attached petition for leave to appeal, Nelson raised all of the issues that he raised on habeas review in this court.

In his exhibit containing the *pro se* petition for leave to appeal, Nelson also included what he described as a letter acknowledging his *pro se* petition. The letter, from the Illinois Supreme Court Clerk and dated February 20, 1991, acknowledged receiving Nelson's letter dated February 13, 1991. It stated that a petition for leave to appeal was filed on his behalf by the state appellate defender on January 17, 1991. It also stated that the petition for leave to appeal that Nelson submitted would be made a part of his file.

The petition for leave to appeal of which this court was aware and which this court considered in deciding Nelson's habeas petition was file-stamped by the Illinois Supreme Court on January 17, 1991, and was filed by the state appellate defender. The copy of the *pro se* petition for leave to appeal that Nelson submitted with his motion for rehearing was not file-stamped or dated by the Illinois Supreme Court.

On remand, this court appointed counsel for Nelson, specifically so that counsel could search the state court records to determine whether Nelson in fact filed a *pro se* petition for leave to appeal. Counsel conducted an exhaustive search, and filed an affidavit detailing his results. The following is excerpted from counsel's affidavit:

> I communicated by telephone with the petitioner, who also wrote to me and informed me in each communication that he had indeed filed a *pro se* petition with the Illinois Supreme Court (as a supplement to the petition filed by Karen Daniel of the Office of the Appellate Defender). Petitioner informed me that the Illinois Supreme Court and Attorney Daniel have copies of such filings, although he did not have them.

> I travelled to Springfield and reviewed the Court file relating to petitioner's 1991 petition for leave to appeal. No *pro se* filings are present in the post conviction petition for leave to appeal file. I spoke with Deputy Clerk John Reichart who informed me he copied the entire existing file off of microfilm.

> I also reviewed the file of Attorney Daniel of the Office of the State Appellate Defender. No *pro se* petition for leave to appeal appeared in that file, although several *pro se* filings of petitioner in other proceedings do appear.

(Aff. of John T. Theis.)

With his affidavit, Nelson's counsel also submitted two letters. One was the February 20, 1991, letter from the Illinois Supreme Court Clerk to Nelson, acknowledging the receipt of his February 13, 1991, letter. The other was a letter from Nelson to his appellate defender, dated January 23, 1991, in which he told his appellate defender that he had filed a petition for leave to appeal on the issues raised in his *pro se* brief.

In a status hearing before this court, Nelson's counsel informed the court of his search, repeating what he set forth in his affidavit. The attorney representing the state stated that he also had checked the state's file again and that the state had not received any post-conviction *pro se* petition for leave to appeal from Nelson.

This court, as the arbiter of fact regarding whether Nelson filed a *pro se* petition for leave to appeal from the dismissal of his post-conviction petition, has a tough task before it, because it appears that Nelson sent *something* to the Illinois Supreme Court in connection with his petition for leave to appeal. Yet, no one, including Nelson's counsel, has been able to determine what Nelson submitted.

The court notes that Nelson's copy of the *pro se* petition for leave to appeal that Nelson claims he filed with the supreme court is not file-stamped by the supreme court. If Nelson had a file-stamped copy, his claim certainly would be more credible. In the absence of such proof that his petition was filed, however, the court is left to speculate

about whether Nelson really filed what he claims he filed.

Moreover, the supreme court has absolutely no record of a *pro se* filing by Nelson. Nelson's counsel informed the court that the supreme court does not keep copies of correspondence, but makes all filings a part of the court record. Nelson's counsel, after a thorough search, found nothing in the supreme court file to indicate that Nelson had submitted a *pro se* petition for leave to appeal. Nelson's counsel also found no *pro se* petition for leave to appeal in Nelson's appellate defender's file, though the file contained copies of Nelson's other *pro se* filings as well as the two letters. The assistant attorney general now assigned to the case also searched his office's files and found no *pro se* petition for leave to appeal.

The most that counsel could find to support Nelson's claim were the February 20, 1991, letter from the supreme court clerk and the January 23, 1991, letter to Nelson's appellate defender, both of which he obtained from the appellate defender's file. Though the letters mention that Nelson sent the supreme court a letter and *pro se* petition for leave to appeal, this court cannot determine whether the petition mentioned in the letters is the same one that Nelson submitted with his motion for rehearing.

Again, the court finds this case troubling because Nelson clearly submitted something to the supreme court. However, this court cannot simply take a guess at what Nelson submitted. Based on the weight and credibility of the information before the court, including the commendable efforts of Nelson's own counsel and the official records of the Illinois Supreme Court, the court cannot find that Nelson filed the *pro se* petition for leave to appeal that he claims he filed.

Moreover, the court finds that holding an evidentiary hearing into this matter would serve no purpose. Nelson's counsel apparently has done all he can to uncover some record of the *pro se* petition supposedly filed by Nelson; thus, it seems that any further efforts would be in vain.

Accordingly, the court will consider Nelson's habeas claims based on the state court proceedings that ended with the supreme court's denying the petition for leave to appeal filed on January 17, 1991, by the state appellate defender. Thus, most of Nelson's post-conviction claims, including the eight claims now before this court, were omitted from his petition for leave to appeal. The question now is whether Illinois would consider those claims forfeited.

## B. Whether Illinois would consider the omitted claims forfeited

■ Until recently, the Seventh Circuit had long held that a habeas petitioner must have presented all of his habeas claims to the state's highest court, and any claim not so presented would be considered procedurally defaulted. *See, e.g., Nutall v. Greer,* 764 F.2d 462 (7th Cir.1985). However, in *Jenkins,* the court refined this rule. Relying on recent United States Supreme Court cases, the court stated that state law alone is a basis for forfeiture in habeas corpus cases, because a default "supplies an independent and adequate state ground for the judgment, so that questions of federal law no longer affect the outcome." *Jenkins,* 8 F.3d at 507 (citing *Coleman v. Thompson,* 501 U.S. 722, 746–51, 111 S.Ct. 2546, 2563–66, 115 L.Ed.2d 640 *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991); *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). The court stated that this implies that when the final state court to consider a case acts on the merits of a federal question and does not also assert an independent state ground of decision, the federal issue is open to habeas review. *Jenkins,* 8 F.3d at 507 (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

The *Jenkins* court found that the habeas petitioner in the case before it had not procedurally defaulted his ineffective assistance of counsel claim by failing to present it on direct appeal to the Illinois Supreme Court, because the state post-conviction court rejected his ineffective assistance claim on its merits without giving forfeiture as a ground. *Jenkins,* 8 F.3d at 507. Thus, the court found that the petitioner's failure to present his claim to the Illinois Supreme Court did not affect his habeas petition. *Id.*

However, the court found that the petitioner nonetheless forfeited his claims, including the ineffective assistance claim. The court noted that Illinois ordinarily treats failure to appeal from denial of a post-conviction petition as a procedural default barring further review. *Id.* (citing *People v. Core,* 48 Ill.2d 544, 545–46, 272 N.E.2d 12, 13–14 (1971); *Zellers v. Duckworth,* 763 F.2d 250, 252 (7th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 319, 88 L.Ed.2d 302 (1985); *Williams v. Duckworth,* 724 F.2d 1439, 1442 (7th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984)). The court thus held that the petitioner procedurally defaulted his claims by failing to appeal because Illinois requires persons seeking post-conviction relief to pursue their appellate remedies. *Jenkins,* 8 F.3d at 508.

*Hogan,* in accordance with which the Seventh Circuit instructed this court to decide Nelson's case, adhered to the concepts set forth in *Jenkins,* but stated them more simply. The court there stated that forfeiture under 28 U.S.C. § 2254, the habeas corpus statute, is a "question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan,* 74 F.3d at 146 (citing *Coleman,* 501 U.S. at 729–44, 111 S.Ct. at 2553–62; *Harris,* 489 U.S. at 255, 109 S.Ct. at 1038). Thus, forfeiture is limited to the issues that the state court insists be raised in its supreme court. *Hogan,* 74 F.3d at 146 (citing *Jenkins,* 8 F.3d at 507–08).

This court erred in its first opinion where it found that Nelson's failure to raise some of his habeas corpus claims in the Illinois Supreme Court on direct appeal resulted in forfeiture of those claims. Under *Jenkins,* Nelson's failure to present his claims to the supreme court on direct appeal does not affect his habeas corpus petition, because the state court considered his claims on their merits in the post-conviction proceedings. *See Jenkins,* 8 F.3d at 507. *See also Cawley v. DeTella,* 71 F.3d 691, 695 n. 6 (7th Cir. 1995) (petitioner's failure to complete his direct appeal by not filing petition for leave to appeal would ordinarily preclude federal review, but did not in that case because the Illinois courts on post-conviction review addressed petitioner's claims on their merits).

However, as the court in *Jenkins* noted, Nelson's failure to complete his state appeals from the order dismissing his post-conviction petition "is a different matter entirely." *Jenkins,* 8 F.3d at 507. Illinois generally requires a defendant to pursue his state appeals after the dismissal of a post-conviction petition. *Id.* The defendant's failure to do so, "coupled with the doctrines of *res judicata* and waiver, ordinarily bars further consideration of all claims which could have been raised." *People v. Core,* 48 Ill.2d 544, 545, 272 N.E.2d 12, 13–14 (1971) (citing Ill.Rev.Stat. ch. 38 ¶ 122–3 (now 725 ILCS 5/122–3); *People v. Holland,* 33 Ill.2d 246, 211 N.E.2d 265 (1965); *People v. Chapman,* 33 Ill.2d 429, 211 N.E.2d 712 (1965)).

Illinois courts recognize an exception to the strict doctrines of *res judicata* and waiver, resulting in claim forfeiture, on the ground of "fundamental fairness." *Cawley,* 71 F.3d at 694 (citing *People v. Hamby,* 32 Ill.2d 291, 294, 205 N.E.2d 456, 458 (1965)). However, the exception is quite narrow. The Illinois Supreme Court has held that a defendant's failure to appeal from a dismissal of his post-conviction petition does not result in forfeiture of the claims only where the failure to appeal results from clearly inadequate representation or from the absence of representation by counsel. *Core,* 48 Ill.2d at 546–47, 272 N.E.2d at 14 (citing *People v. Polansky,* 39 Ill.2d 84, 233 N.E.2d 374 (1968); *People v. Slaughter,* 39 Ill.2d 278, 235 N.E.2d 566 (1968); *People v. Raymond,* 42 Ill.2d 564, 248 N.E.2d 663 (1969)).

In the present case, Nelson was represented by counsel during his post-conviction proceedings, including on appeal to both the appellate and supreme courts. Nelson has not contended that his post-conviction counsel were ineffective. Thus, the "fundamental fairness" exception does not apply to his case, which means that the general forfeiture rule applies. Consequently, once Nelson filed his post-conviction petition in state court, he was required to take all of his claims to the Illinois Supreme Court. *See Jones v. Washington,* 15 F.3d 671, 675 (7th

Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2753, 129 L.Ed.2d 870 *reh'g denied,* —— U.S. ——, 115 S.Ct. 28, 129 L.Ed.2d 926 (1994). Because he failed to do so, he forfeited his right to raise those claims in this court.

Two other exceptions to the procedural default rule exist, but neither applies to Nelson's case. First, a petitioner can overcome the effects of procedural default by showing cause for the default, as well as actual prejudice from it. *Wainwright v. Sykes,* 433 U.S. 72, 84, 87, 97 S.Ct. 2497, 2504, 2506, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). Second, even if a petitioner cannot show cause for his procedural default, a federal court may grant a writ of habeas corpus in the "extraordinary case" where a fundamental "miscarriage of justice" has resulted in an unjust incarceration. *Carrier,* 477 U.S. at 495–96, 106 S.Ct. at 2649. In such a case, the petitioner must show that a constitutional violation probably has resulted in the conviction of an innocent person. *Id.*

This court addressed both exceptions in its original opinion denying Nelson's petition for a writ of habeas corpus. *See United States ex rel. Nelson v. Godinez,* mem. op. and order at 5–6, 1994 WL 376858 (N.D.Ill. July 14, 1994). The court finds that its analysis in that opinion still applies, and therefore finds that neither exception saves Nelson's claims from procedural default. Moreover, the court notes that the cause and prejudice doctrine is akin to Illinois' "fundamental fairness" exception to its claim forfeiture rule, and that the court similarly has found that the "fundamental fairness" exception is not available to Nelson.

Accordingly, since the court has found that Nelson procedurally defaulted his eight claims at issue on remand, the court need not address the claims on their merits.

### III. *CONCLUSION*

For the reasons set forth above, petitioner Ordell Nelson's petition for a writ of habeas corpus is denied.